<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DR. ALEXANDER THOMASIAN, : <br> : <br> Plaintiff, : <br> : Civil Case No. 08-2218 (FSH) <br> v. : <br> : **OPINION & ORDER** <br> NEW JERSEY INSTITUTE OF TECHNOLOGY, : <br> : Date: February 3, 2009 <br> Defendant. : <br> : | |

**<u>HOCHBERG, District Judge</u>**

This matter comes before the Court upon Defendant New Jersey Institute of Technology's ("NJIT") Motion to Dismiss Counts 2, 3, 4, and 5 of Plaintiff Alexander Thomasian's Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6);[1] and the Court having considered the written submissions of the parties pursuant to Fed. R. Civ. P. 78; and

it appearing that Plaintiff was formerly a tenure track professor in the Computer Science Department at NJIT; and

it appearing that Plaintiff was the subject of a sexual harassment investigation during the Fall 2004 semester;[2] and

---

[1] Defendant NJIT has not moved to dismiss Count 1, which asserts violations of the New Jersey Law Against Discrimination.

[2] Much of Plaintiff's Complaint is devoted to a discussion of the sexual harassment charges brought against Thomasian by one of his female Ph.D. students, although neither the charges nor NJIT's investigation of them form the basis for Plaintiff's current litigation. Plaintiff alleges that the investigation had "many defects" and that NJIT was complicit in "encouraging

it appearing that Plaintiff was notified by letter dated June 8, 2006 from Provost Priscilla P. Nelson that the NJIT Board of Trustees had denied his application for tenure; and

it appearing that Plaintiff was instead offered a terminal appointment for the 2006-2007 academic year, which he accepted; and

it appearing that Plaintiff's last day of employment with NJIT was June 30, 2007, at the end of the 2007 academic year; and

it appearing that Plaintiff believes his application for tenure was denied and his employment with NJIT ultimately terminated because of his age; and

it appearing that Plaintiff subsequently filed suit against NJIT on May 7, 2008, alleging five separate counts: (1) age discrimination in violation of New Jersey's Law Against Discrimination ("NJLAD"); (2) wrongful discharge in violation of New Jersey public policy; (3) libel, slander or defamation; (4) tortious interference with advantageous business relationship, specifically Thomasian's employment at NJIT; and (5) malicious interference with Thomasian's advantageous ability to obtain employment outside of NJIT; and

it appearing that in order to survive a Rule 12(b)(6) Motion to Dismiss,[3] a complaint

---

the allegations of the student." Plaintiff attempts to draw a connection between the sexual harassment charges and the current proceeding by alleging that the charges were "helpful in justifying Plaintiff's unjust removal from NJIT based on his age." According to Thomasian, "[a]lthough the sexual harassment charges were not presented as a reason for his tenure denial, they clearly formed the basis for the Tenure Committee's actions, as the reasons presented to Plaintiff were baseless." Thomasian does not, however, appear to have evidence in support of a connection between the sexual harassment charges, his discharge from NJIT and his allegations of age discrimination.

[3] Plaintiff's opposition brief acknowledges that the current motion is a motion to dismiss pursuant to Rule 12(b)(6), but then attempts, without explanation, to treat the motion as one for summary judgment under Rule 56. Presumably, this confusion stems from Defendant's introduction of "matters outside the pleading," such as Thomasian's Tort Claim Notice, in the

"does not need detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1959 (2007);[4] and

it appearing that, nevertheless, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact," *Id*. at 1965 (internal quotations and citations omitted); *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element.  This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted); and

it appearing that Defendant moves to dismiss Count 2 of Plaintiff's complaint, which

---

notice.  In evaluating a Rule 12(b)(6) motion to dismiss, the Court may consider the Complaint, exhibits attached to the Complaint, matters of public record, and undisputedly authentic documents if the Plaintiff's claims are based on those documents.  *Pension Guaranty Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1992).  Any materials outside the pleadings that have been offered thus far are, as Defendant notes, integral to Plaintiff's Complaint and can be considered without converting this motion into one for summary judgment.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997).  Accordingly, the Court will continue to treat the current motion as a Rule 12(b)(6) motion to dismiss.

[4] Although a court does not need to credit a complaint's "bald assertions" or "legal conclusions," it is required to accept as true all of the allegations in the complaint as well as all reasonable inferences that can be drawn therefrom and view them in the light most favorable to the plaintiff.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997), *citing Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989).  *See also Burlington,* 114 F.3d at 1429-30.  The Supreme Court recently held that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic Corp.*, 127 S.Ct. at 1969.

asserts a common law claim for wrongful discharge in violation of a clear mandate of public policy, because it is duplicative of Count 1, Plaintiff's claim under the NJLAD; and

it appearing that "New Jersey courts and courts interpreting New Jersey law have held that common law claims for wrongful discharge in violation of public policy are preempted when a statutory remedy under the NJLAD exists," *Santiago v. City of Vineland*, 107 F. Supp. 2d 512, 567 (D.N.J. 2000); *Lawrence v. National Westminster Bank New Jersey*, 98 F.3d 61, 73 (3d Cir. 1996) (holding that "[b]ecause the sources of public policy Lawrence relies on are coterminous with his statutory claims, he cannot advance a separate common law public policy claim."); *Catalane v. Gilian Instrument Corp.*, 271 N.J. Super. 476 (App. Div. 1994) (holding that the common law claim of violation of public policy should not be submitted to jury where statutory remedy under LAD exists); and

it appearing that Defendant moves to dismiss Count 3 because Plaintiff's libel, slander or defamation claims are time barred by the applicable statute of limitations; and

it appearing that New Jersey requires that such claims be brought within one year "after the publication of the alleged libel or slander," N.J.S.A. 2A:14-3;[5] and

it appearing that Plaintiff argues, in response, that the defamation claims are not time-

---

[5] N.J.S.A. 2A:14-3 provides in relevant part that "Every action at law for libel or slander shall be commenced within 1 year next after the publication of the alleged libel or slander." To succeed on his defamation claims, Plaintiff must "plead facts sufficient to identify the defamatory words, their utterer and the fact of their publication. A vague conclusory allegation is not enough." *Miele v. Rosenblum*, 254 N.J. Super. 8, 12 (App. Div. 1991). He must also allege a specific publication by the named defendant or its authorized agent within the relevant limitations period. *See Monroe v. Host Marriot Services Corp.*, 999 F.Supp. 599 (D.N.J. 1998).

barred because Defendant's tortious conduct constituted a "continuing wrong;"[6] and

it appearing that the continuing wrongs, or continuing violation, doctrine is "an equitable exception to the statute of limitations," *Shepherd v. Hunterdon Developmental Ctr.*, 174 N.J. 1, 6 (2002); and

it appearing that "[w]hen an individual is subject to a continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases,"*Wilson v. Wal-Mart Stores*, 158 N.J. 263, 272 (1999); *see also Shepherd*, 174 N.J. at 6-7; *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754-55 (3d Cir.1995));[7] and

it appearing that the continuing wrong doctrine does not apply to Count 3 because Plaintiff has failed to allege any facts that tend to establish any publication of alleged libel or slander within one year prior to May 7, 2008, when this lawsuit was initiated;[8] and

---

[6] Plaintiff argues that NJIT's "tortious defamatory conduct continued up to and including" the date on which the Tort Claim Notice was filed and that "he continued to suffer defamatory wrongs at defendant's behest even after he ended his employment at NJIT, through NJIT's tortious interference with plaintiff's other employment opportunities."

[7] To rely upon this doctrine, Plaintiff must establish that each of Defendant's challenged acts constitutes a part of a broader pattern of discrimination or defamation, and that at least one of those acts occurred during the statutory limitations period.  In evaluating the applicability of the continuing wrongs doctrine, courts differentiate between "discrete acts" that are independently actionable at the time they occur and continuing violation claims which only become actionable as a result of the cumulative impact of a number of individual acts.  *Shepherd*, 174 N.J. at 19.

[8] Plaintiff's defamation claims are based on allegations that statements regarding the sexual harassment charges brought against him in 2004 that were communicated to NJIT's Tenure Committee and post-employment job references.  Any statements made to the Tenure Committee were allegedly factored into the Committee's decision to deny his tenure request.  Any relevant publication to the members of NJIT's tenure committee would not have occurred after the decision to deny tenure.  Therefore, such publication must have *a fortiori* occurred before June 8, 2006, approximately one year and eleven months before Plaintiff initiated this action.  Because the Complaint does not specifically allege a relevant utterance or publication

it appearing that Defendant also moves to dismiss Count 4 because Plaintiff does not assert facts that tend to establish a tri-partite relationship; and

it appearing that it is "fundamental to a cause of action for tortious interference with a prospective economic relationship that the claim be directed against defendants who are not parties to the relationship," *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 753 (1989); *Weil v. Express Container Corporation*, 360 N.J. Super. 599, 614 (App. Div. 2003); and

it appearing that, as a result, an employer may not tortiously interfere with its relationship with its own employees, *Weil*, 360 N.J. Super at 614 (holding that "an employer and its employees may not interfere with its relationship with its own employees.);[9] and

---

after that date, any actionable statements to the Tenure Committee were made outside of the statute of limitations.
    Plaintiff also argues that statements allegedly made after his discharge also constitute actionable defamation, in that NJIT allegedly engaged in defamation to prevent Plaintiff from securing a new job.  Having reviewed both Plaintiff's Complaint and Plaintiff's Brief in Opposition to the current motion, it is clear that Plaintiff has completely failed to identify any defamatory words, their utterer or the facts of their publication with detail sufficient to satisfy the pleading requirements established by cases in this jurisdiction.  *See Miele*, 254 N.J. Super. at 12.  Instead, Plaintiff offers only the conclusory argument that his continued unemployment must be caused by Defendant's continued defamation and that "so long as Plaintiff remains unemployed and NJIT is in a position to provide a reference as to his previous employment, defamation, slander and libel may continue to occur."  Further, the Court has considered on its own and in the interests of justice whether the Complaint could be amended to cure these deficiencies.  However, because Plaintiff has failed to provide even the most basic of facts regarding his defamation claims, the Court has found nothing in either the Complaint or Plaintiff's Brief to suggest that the filing of an amended Complaint would elicit sufficient assertions of fact.

    [9] Plaintiff's own brief acknowledges case law "that rebuffs his theory that a claim is sustainable by an employee against his or her employer with whom an employer contract exists." Nonetheless Plaintiff argues that this claim should be allowed to proceed because "[t]here is no remedy in contract law to right the wrong defendant visited against plaintiff.  Moreover, the Law Against Discrimination does not extend to the wrongs address[ed] in count four.  If plaintiff is precluded from suing defendant for ruining his relationship with it while he was employed here, then plaintiff is without recourse."  Plaintiff argues for an exception to existing case law primarily on the basis that "his relationship with NJIT during the last four years

it appearing, in the alternative, that Defendant moves to dismiss Counts 2, 3, 4, and 5 for failure to comply with the 90-day notice provision of New Jersey's Tort Claims Act; and

it appearing that the Tort Claims Act mandates that tort claims cannot be brought against public entities unless notice is provided to the public entity within 90 days of the accrual of the claim;[10] and

it appearing that NJIT is a public entity for purposes of the New Jersey Tort Claims Act, *Bonitsis v. New Jersey Inst. of Tech.*, 363 N.J. Super. 505, 522 (App. Div. 2003), *rev'd on other grounds*, 180 N.J. 450 (2004) (affirming the dismissal of tortious interference and intentional infliction of emotional distress claims against NJIT deans for failure to comply with the Tort Claims Act's notice requirements); *Fuller v. Rutgers, The State University*, 154 N.J. Super. 420, 421 (App. Div. 1977) (holding that public universities in New Jersey are public entities for the purposes of the Tort Claims Act notice provisions); and

it appearing that Plaintiff filed the notice of claims required by the statute on February 6, 2008; and

it appearing that Plaintiff has failed to allege facts beyond a speculative level that tend to

---

of his employment (2004-2007) was not strictly one centered upon a contract," because Plaintiff was attempting to secure tenure. Plaintiff fails to provide any case law supporting the creation of such an exception, and the Court declines to create such an exception on its own.

[10] N.J.S.A. 59:8-3 states that "No action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J.S.A. 59:8-8 states the time frame in which such notice must be presented and bars plaintiffs from pursuing claims if such notice is not timely presented: "The claimant shall be forever barred from recovering against a public entity or public employee if: (a) He failed to file his claim with the public entity within 90 days of accrual of his claim except as otherwise provided in section 59:8-9; or (b) Two years have elapsed since the accrual of the claim." Plaintiffs can, in limited situations, request leave to file a late notice of claim. Both parties acknowledge that Plaintiff has not done so in this proceeding.

establish that his tort claims accrued within 90 days before Plaintiff filed the Tort Claim Notice;[11]

**IT IS** on this 3rd day of February, 2009,

**ORDERED** that Defendant's Motion to Dismiss is **GRANTED**; and it is further

**ORDERED** that Counts 2, 3, 4, and 5 of Plaintiff's Complaint are **DISMISSED** for failure to state a claim upon which relief can be granted.

                                                **/s/ Faith S. Hochberg**
                                                Hon. Faith S. Hochberg, U.S.D.J.

---

[11] Plaintiff again cites the continuing wrong doctrine in an attempt to sustain these claims. As discussed herein, this doctrine postpones the date on which the statute of limitations begins to run if a plaintiff alleges a continual, cumulative pattern of tortious conduct. However, assuming arguendo that the continuing wrong doctrine applies to a pattern of tortious conduct preceding the tort claim notice, Plaintiff must still make an allegation of a tortious act comprising part of that pattern within the 90 days preceding the filing of his Tort Claim Notice on February 6, 2008.

    Yet Plaintiff has not asserted facts establishing that the Defendant's tortious conduct occurred within the 90 days preceding February 6, 2008. Counts 2 and 4 of Plaintiff's complaint concern his discharge from NJIT, and the alleged tortious interference with his employment contract that led to his termination. The tortious acts underlying such counts necessarily occurred before June 30, 2007, Plaintiff's last day of employment at NJIT. Even if Plaintiff's claims accrued on his last day of employment, they are still time-barred under the Tort Claims Act because February 6, 2008, when the notice was filed, is more than 90 days after June 30, 2007; Plaintiff never filed or served a motion for leave to file out of time; and more than a year has now passed since June 30, 2007. NJIT completed its tenure review even earlier so any claims accruing as a result of that process are also barred by the notice provisions.

    Although the allegations contained in Counts 3 and 5 could conceivably have continued after job termination, the Plaintiff in this case has not alleged any facts tending to show that an act of tortious interference or defamation actually occurred within the 90 days preceding the filing of the tort claim notice. In neither the Complaint nor Plaintiff's Brief in Opposition has he alleged any instance of tortious conduct continuing to a date within 90 days of the filing of his Tort Claims Notice. Moreover, New Jersey case law rejects the use of the continuing wrong doctrine in cases such as this. *See Beck v. Tribert*, 312 N.J. Super. 335, 347 (App. Div. 1998) (agreeing with courts that have held "that negative references following an alleged retaliatory discharge do not constitute a 'continuing violation.'").