UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DR. ALEXANDER THOMASIAN, | Hon. Faith S. Hochberg |
| Plaintiff, | Civil Action No. 08-cv-2218 |
| -vs.- | |
| NEW JERSEY INSTITUTE OF TECHNOLOGY, | **JOINT FINAL PRETRIAL ORDER** |
| Defendant. | |

This matter having come before the Court for a pretrial conference pursuant to Fed.R.Civ.P.16; and Jennifer L. Gottschalk, Esq., having appeared for plaintiff Alexander Thomasian ("Thomasian"), and Tricia B. O'Reilly, Esq., and M. Trevor Lyons, Esq., Connell Foley LLP, having appeared for defendant New Jersey Institute of Technology ("NJIT") ; and counsel having been notified that

(1)     a jury trial in this matter has been scheduled before Hon. Faith S. Hochberg on _to be set by Judge Hochberg_

(2)     The pretrial submissions detailed in ¶¶2 and 18 below are to be submitted no later than March 15, 2010, or they will be deemed waived; and

(3)     A pretrial housekeeping conference is scheduled before Hon. Faith S. Hochberg on _to be set by Judge Hochberg_

the following Final Pretrial Order is hereby entered:

1. **JURISDICTION** (set forth specifically):

   Jurisdiction in this Court is based upon 28 U.S.C. sec. 1332(a)(1). Specifically, because the parties are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000, jurisdiction arises under 28 U.S.C. sec. 1332 (a).

2. **PENDING/CONTEMPLATED MOTIONS** (Set forth all pending or contemplated motions, whether dispositive or addressed to discovery or to the calendar. Also, set forth the nature of the motion and the return date. If the Court indicated that it would rule on any matter at pretrial, summarize that matter and each party's position. NOTE: ALL REMAINING PRE-TRIAL MOTIONS INCLUDING DAUBERT AND IN LIMINE MOTIONS SHALL BE FILED NO LATER THAN March 15, 2010; and any response shall be submitted no later than April 2, 2010. Only those motions listed herein will be entertained prior to trial.)

   The sole pending motion is defendant's motion for summary judgment seeking dismissal of count one of the complaint. Its return date was December 21, 2009.

   Defendant NJIT also contemplates bringing the following *in limine* motions at the time of trial or at another time as the Court may set:

   1. Motion in limine to bar any reference to and the admission into evidence of the so called "Faculty Schedule," document labeled NJITPROD 02206-02234.

   2. Motion in limine to bar any reference to and the admission into evidence of the so called Gang Fu recommendation letter and related documents, specifically document labeled in Thomasian's production 00075-00079.

   3. Motion in limine for a limiting instruction advising the jury that if they find that there was any alleged failure to review Thomasian for tenure in October 2004, which is denied by defendant NJIT, such a finding is still only relevant if Thomasian can show that it was motivated by age discrimination.

   4. Motion in limine to bar any testimony as to the vote of no confidence as to Dr. Stephen Seidman and/or any issue relating to his departure from NJIT.

   5. Motion in limine to bar any testimony as to NJIT's sexual harassment investigation of a student complaint made against defendant Thomasian, [including the identity of the student who complained], except the conclusions reached and the fact of the investigation.

   6. Motion in limine to bar any evidence of Thomasian's alleged funding and/or grant issue.

7. Motion in limine to bar any evidence of Thomasian's plagiarism charge made against the student who complained of sexual harassment.

8. Motion in limine to dismiss punitive damages, or in the alternative to bifurcate the punitive damages stage of trial pursuant to the Punitiver Damages Act, and only permit punitive damages testimony and evidence after a specific finding of liability.

9. Motion in limine to bar any reference to NJIT's voluntary retirement program.

10. Motion in limine to bar any reference to a pattern and practice of age discrimination as stated in plaintiff's legal issues below.

Plaintiff anticipates filing the following motions in limine:

1. Motion in limine to bar admission of teaching evaluations of plaintiff and defendant's summary chart.

3. **STIPULATION OF FACTS** (Set forth in narrative form a comprehensive listing of all uncontested facts, including all answers to interrogatories and admissions, to which there is agreement among the parties):

1. Plaintiff Dr. Alexander Thomasian was offered and accepted a tenure-track appointment as a full professor in the Department of Computer and Information Sciences on May 2, 2000.

2. Appointment at NJIT, whenever feasible, is made at the recommendation of the Department Committee on Promotion and Tenure ("Department P&T Committee") to the Chairperson of the Department. This committee is comprised only of the department chairperson and tenured full professors in the applicant's department. It does not include members of NJIT's administration. Jason Wang, Frank Shih, Joseph Leung, James McHugh, James Geller and Yehoshua Perl, all senior faculty, were among the tenured full professors in plaintiff Thomasian's department at the time of his hire.

3. Plaintiff Thomasian was initially given a four-year tenure-track period ("TTP") and therefore would have had to have been considered for tenure in his third year at NJIT. On June 30, 2001, however, William C. Van Buskirk, NJIT's then provost, granted plaintiff Thomasian's request for a seven (7)-year TTP.

4. Under a seven-year TTP, plaintiff Thomasian would first be eligible for tenure consideration in his fifth year of service. If he was not awarded tenure at that time, but was still considered to be making sufficient progress towards tenure to justify reappointment, he would be considered in his sixth year of service, and if not successful at that time, his seventh year would be his terminal appointment.

5. Plaintiff Thomasian was approximately fifty-four (54) years old at the time of his hire.

6. Tenure at NJIT is granted pursuant to what is essentially a four-step review process. The first body to review an applicant's application for tenure is the applicant's Department P&T Committee.

7. If a majority of the Department P&T Committee votes in favor of a candidate's tenure application that recommendation is then forwarded to the University Promotion & Tenure Committee ("University P&T Committee"), which is the second step of review.  The University P&T Committee is comprised of three faculty members appointed by the President and four members chosen by the President from a slate nominated by the faculty, and it is periodically reviewed to insure that it represents all constituencies within the University.

8. If, however, a tenure-track faculty member fails to receive a majority or the vote of his Department P&T Committee, he has only a right of written appeal to his Department P&T Committee.  If the Departmental P&T Committee upholds its decision, it may forward a report, including if applicable, a minority report, to the University P&T Committee, which will then hear the appeal.  The University P&T Committee will transmit its finding, including a finding of no merit to the appeal, to the faculty member and the tenure committee chairperson concerned.

9. Accordingly, if an applicant is not successful in garnering the support of his or her department at the first step of the process, or in a subsequent appeal, his tenure application is generally not substantively review by NJIT's Administration at the subsequent steps.

10. All tenure track faculty at NJIT are subject to an annual review by their Department P&T Committee and a reappointment process.  Plaintiff Thomasian's first annual review was given to him on or about May 10, 2001, by then-Chair of the Computer Science P&T Committee, Dr. Joseph Leung, as the representative of the Committee. That initial evaluation by this Department P&T Committee noted several areas for improvement in plaintiff Thomasian's overall performance, including in the area of teaching evaluations.

11. The following year, plaintiff Thomasian received his second annual performance review on May 23, 2002.  That performance review also noted difficulties with teaching, and stated in relevant part: "teaching is unsatisfactory."

12. On September 5, 2002, Provost Van Buskirk notified plaintiff Thomasian that because this was his third annual review, he would need to submit materials for an "intensive documented review" of his progress towards tenure.  That notification also advised plaintiff Thomasian that "[t]he purpose of this review is to assess and provide you with feedback on your progress towards tenure.  Inadequate progress will result in a terminal appointment."

13. Plaintiff Thomasian submitted the requested materials and a majority of his Department P&T Committee, by a vote of 6-2, recommended the continuation of his employment. Then-Chair of the Computer Science Department Dr. James McHugh originally voted against reappointment. Dr. McHugh notified plaintiff Thomasian about the need for improved teaching, to which plaintiff Thomasian seemed to respond favorably. Based upon this discourse with plaintiff Thomasian, Dr. McHugh subsequently modified his original negative vote and submitted a favorable minority report.

14. The January 21, 2003 majority report that recommended continued employment at NJIT noted concerns with plaintiff Thomasian's teaching, and was clear that its recommendation was subject to the expectation that plaintiff would turn around his teaching evaluations. The report noted that:

> Dr. Thomasian has had low teaching evaluations during his first years at NJIT because he taught over the heads of many students. It has taken him a great deal of effort to adapt to the level of average students that he is teaching. While NJIT has its share of brilliant students, the average is certainly below what Dr. Thomasian experienced a the University of Southern California and Case Western Reserve University, where he was assistant professor, or UCLA where he received his Ph.D. The other reason why Dr. Thomasian has had low evaluations is because he has assumed that students actually know the material that is taught in prerequisite classes. Unfortunately, for new graduate students coming from majors as diverse as architecture and chemistry, this is often not the case. The C[omputer] S[cience] Department has now taken steps to improve Dr. Thomasian's teaching evaluations. Dr. Thomasian has been assigned two mentors from the full professors of the CS Department. These mentors have worked with Dr. Thomasian to revise both the material that he is covering and his classroom behavior. Dr. McHugh and one of his mentors will observe Dr. Thomasian in the class room to offer concrete suggestions how to become more accessible to the students.
>
> Beginning with the Fall 2003, Dr. Thomasian has already, on his own initiative, revised the material covered in his courses. He has added a great amount of material which, up to now, he has taken for granted, to the syllabus. This will make it easier for students that are lacking some of the prerequisite materials to keep up with the actual materials of the class.

15. Plaintiff Thomasian has admitted that following his intensive third-year review he understood that he needed to improve his teaching.

16. On February 25, 2003, Dean Stephen Seidman of the College of Computer Science forwarded the vote of the Department P&T Committee, and his recommendation regarding plaintiff Thomasian's third-year review to Provost Van Buskirk.

17. Plaintiff Thomasian's employment was renewed for another year following this evaluation.

18. The following year on March 31, 2004, plaintiff Thomasian received his fourth-year review.

19. On March 16, 2005, Dr. Narain Gehani submitted two performance reviews to the Provost's Office regarding plaintiff Thomasian.

20. Pursuant to the terms of NJIT's Faculty Handbook and consistent with plaintiff Thomasian's seven-year TTP, his first year of eligibility for consideration was his fifth academic year.

21. Accordingly, by email dated October 18, 2004, plaintiff Thomasian was asked to submit a curriculum vitae for the Departmental P&T Committee's consideration of his eligibility. The process followed in the Department was such that at the start of the fall semester candidates who were eligible for their first tenure review were asked to submit a CV to the Department P&T Committee. Based upon that CV, the Committee would make an initial determination as to whether it would support the application. If the Committee decided that the CV presented a sufficient basis to support the application, the Committee would advise the applicant to submit a full dossier for review. In the event that the CV did not present a basis for the Committee's support the applicant was so notified and provided with "feedback."

22. In response to Dr. Gehani's email request dated October 18, 2004, Thomasian prepared and submitted an approximate twenty-page CV in support of his consideration for tenure that year to the Department P&T Committee. On October 25, 2004, Dr. Gehani, the Chair of the Department of Computer Sciences, emailed plaintiff Thomasian that the Department P&T Committee would not be advancing his tenure application that year.

23. By email dated October 25, 2004, Dr. Thomasian responded to Dr. Gehani's email.

24. Pursuant to NJIT's Faculty Handbook, plaintiff Thomasian applied for tenure in his sixth academic year at NJIT. Specifically, he submitted a dossier of materials and updated CV in support of his application for tenure.

25. Following the Department P&T Committee's evaluation of his application, plaintiff Thomasian was first verbally informed by Dr. Gehani that the Committee voted not to support his application. Dr. Gehani's verbal advisement was followed by an e-mail dated December 20, 2005, stating that the Department P&T Committee voted not to support his tenure application.

26. The contemporaneous documentation shows that a majority of plaintiff Thomasian's P&T Committee, by a vote of 5-2 (with one absence), voted not to recommend plaintiff Thomasian for tenure that year.  Most of the individuals sitting on the Department P&T Committee were the same individuals who had initially recommended plaintiff's hire, including Jason Wang, Frank Shih, Joseph Leung, James McHugh, James Geller, Yehoshua Perl, Ali Mili and Boris Verkovsky.

27. Stephen Seidman was no longer Dean of the College at that time, nor does plaintiff possess any knowledge indicating that Daljit Ahluwalia, who was then Dean, played any role or influenced his Department P&T Committee's vote.  Plaintiff has no knowledge or facts to support an assertion that any member of NJIT's administration interjected or communicated with his Department P&T Committee about his tenure review.

28. Plaintiff recognizes that without the support of colleagues in his own department, it is difficult to obtain tenure at NJIT.

29. Plaintiff Thomasian appealed his Department P&T Committee's vote against his tenure application.  That appeal was heard on January 11, 2006, and plaintiff was advised that his Department P&T Committee had upheld its original vote on Janaury 20, 2006.  The notice also indicated that the Department Chair, as the representative of the Department P&T Committee, was recommending that plaintiff Thomasian be given a terminal contract for academic year 2006-07.

30. In either late January or early February 2006, plaintiff Thomasian submitted an appeal to the University P&T Committee.  On April 6, 2006, plaintiff was informed that his appeal to the University P&T Committee was unsuccessful, and that the University P&T Committee was not going to recommend him for tenure over the negative vote of his Departmental P&T Committee.  With respect to the decision not to recommend tenure, plaintiff acknowledges that he has no evidence or facts indicating that any member of NJIT's administration ever communicated or interjected themselves into either P&T Committee's deliberations.

31. Based upon his failure to obtain the recommendation of either his Department or the University P&T Committee, NJIT's Board of Trustees did not grant plaintiff Thomasian tenure at its June 8, 2006 meeting.

32. Plaintiff Thomasian was notified of the denial of his tenure application and offered a terminal contract on June 8, 2006.

33. On May 4, 2006, plaintiff Thomasian filed a Step I grievance appealing the decision not to recommend him for tenure.

34. After the grievance was denied at the first two steps, it progressed to the University Academic Process Review Committee on April 30, 2007.  The APRC is comprised of

four (4) university employees, two (2) selected by the Professional Staff Association, Inc. AAUP ("PSA"), plaintiff's labor representative, and two (2) selected by NJIT. It is charged with reviewing the functioning of NJIT's academic processes to determine whether there had been a substantial process failure resulting in a capricious determination, substantial procedural violation or discriminatory treatment by a university body.

35. Plaintiff Thomasian presented a ten-(10) page submission in support of his appeal to the APRC.

36. Plaintiff Thomasian raised two claims to the APRC. ."

37. The APRC found that the investigation into unprofessional conduct by plaintiff Thomasian had no prejudicial effect on his tenure application.

38. Plaintiff Thomasian argued that he was denied two opportunities to apply for tenure in violation of NJIT's Faculty Handbook. This claim was also rejected by the APRC, which found that despite a lack of adequate written records, the Department P&T Committee met its essential obligation for tenure review in the fifth year under the Faculty Handbook.

39. Plaintiff Thomasian did not advance an argument concerning age discrimination to the APRC.

40. NJIT's Faculty Handbook notes that teaching is central to the purpose of the university, and that "its effective practice is an essential and primary criterion in the evaluation of qualifications of an individual for appointment or advancement."

41. Based upon the need to assess teaching effectiveness, NJIT provides its students with an opportunity to provide feedback for each class taught by an instructor. The evaluation forms ask students to rate an instructor's effectiveness on a scale from 0 to 4.

42. Plaintiff Thomasian's mean score on certain questions dealing teaching effectiveness on these evaluations was in the low to mid "2's" for many of the years he taught.

43. Plaintiff Thomasian was approximately sixty (60) years old when he was offered a terminal appointment in June 2006.

44. The parties will stipulate to the salary and benefits which plaintiff earned at the time of his termination as reflected in NJIT's payroll records and benefits documents.

**4.    JUDICIAL NOTICE**

A. Defendant requests that the Court take judicial notice of the following facts: **None.**

    B. Plaintiff objects to the taking of judicial notice for the following reasons: **Not Applicable**

**5.**    **JUDICIAL NOTICE**

    A.    Defendant requests that the Court take judicial notice of the following facts: **None.**

    B.    Plaintiff objects to the taking of judicial notice for the following reasons: **Not Applicable**

**6.**    **PLAINTIFF'S CONTESTED FACTS** (State separately for each defendant. Proofs shall be limited at trial to the matters set forth below. Failure to set forth any matter shall be deemed a waiver thereof).

1.    At the time he was hired, and until he was terminated in June 2007, plaintiff was a fellow of the IEEE (Institute of Electrical and Electronics Engineers).

2.    During his employment at defendant NJIT, plaintiff advised several PhD students every semester and oversaw MS student projects.

3.    While he was employed at defendant NJIT, plaintiff continually worked on writing and submitted for publication materials in his field. By example, in the year leading up to March 2005, he was preparing two papers; had had three papers accepted for publication; had submitted six papers for publication; and had one journal paper published. During the same period, Dr. Thomasian had submitted two conference papers, and had six conference papers published. And for that period, he had published six book chapters.

4.    While he was employed at defendant NJIT, plaintiff applied for and obtained approximately $1,128,183 in grants; these grants supported research projects and enabled him to employ some of the graduate students at NJIT.

5.    During the one-year period before March 2005, Dr. Thomasian served on the Ph.D Committee for the Computer Science Department and was the PC Member for three conferences.

6.    Overall, plaintiff recognized the importance of the factors considered when applying for tenure, namely: teaching; research, scholarship and professional practice; and service. Thus, he carefully monitored his performance in those areas, sometimes resulting in disagreements with colleagues.

7.    After initial difficulties in teaching some advanced courses where the students had not taken foundational course work in the field, at plaintiff's own initiative and to assist the students more, plaintiff provided additional materials to the students, to enhance their understanding of the fundamental subject matter. He also coordinated courses CS630

and CS650, while working on prerequisites and improving certain Masters-level courses, although those efforts were ignored.

8.   The scale appearing on the student evaluation forms for faculty indicate:  "4-excellent; 3-good; 2-satisfactory; 1-fair; 0-poor."

9.   "Accomplishment" is one of the general considerations included in the Policies on Appointments, Promotion, Tenure, and Terminations in the NJIT Faculty Handbook.  It specifies that:
>   Appropriate consideration shall be given to individual achievements and attributes such as academic degrees, professional experience, research publication, creative works, maturity and integrity, participation in learned and professional societies and such other accomplishments as may contribute significantly to the programs and objectives of the faculty, the department, the university and the community.

10.   Other faculty in the Computer Science Department recognized plaintiff as an excellent researcher with a good publication and service record.

11.   While plaintiff was employed at NJIT (AY 2000 - AY 2007), defendant hired other individuals who were at least twenty years younger, to teach in the College of Computer Science  Each of these individuals, including a certain faculty member who was given tenure in 2006, earned significantly less in salary than plaintiff's last year's salary of over $111,000.

12.   During the period of plaintiff's employment, thirty colleagues were tenured; of those, nine were given tenure on or after plaintiff was hired.

13.   The Faculty Handbook requires that the Department Committee on Promotion and Tenure maintain adequate written records of its deliberations.  The Promotion and Tenure Committee should keep decisional records of all deliberations it conducts.

14.   No records were kept of the departmental P&T Committee's review and denial of plaintiff's application for tenure during his fifth year of employment.

15.   During the ARPC's rejection of his final appeal denying him tenure in his sixth and final year for review, the ARPC noted that "there is no written record of CS Department P&T Committee deliberations."  Apparently, this is the basis of defendant's claim that plaintiff was well aware of the lack of records.  Plaintiff maintains that he did not know that there were absolutely no records kept of his fifth year tenure consideration until the exchange of discovery in the instant case.

16. Plaintiff Thomasian's first claim to the ARPC was that his tenure application was tainted by an internal investigation into alleged unprofessional conduct whose characterization had been changed to a finding of "error in judgment."

17. Plaintiff Thomasian will introduce the stipulated fact of his benefits package from his last year of employment at NJIT, academic year 2006-07. Additional facts concerning his loss will be introduced through testimony of his economic expert, who will calculate the loss forward to 2015, at cumulative present value, arriving at a total of $1,546,057.

**7.     DEFENDANTS' CONTESTED FACTS** (State separately for each plaintiff. See instructions above).

1.     While not an exhaustive list, tenure at NJIT is generally granted based upon a tenure track faculty member's documented accomplishments with respect to (i) teaching, (ii) research, scholarship and professional practice, and (iii) service. As to teaching effectiveness, NJIT's Faculty Handbook provide sat Section 201.II.A (page 12) that:

A.     Teaching Effectiveness. As teaching is central to the purpose of the New Jersey Institute of Technology, its effective practice is an essential and primary criterion in the evaluation of qualifications of an individual for appointment or advancement

2.     Thomasian's first annual review was given to him on or May 10, 2001 by then Chair of the Computer Science P&T Committee, Dr. Joseph Leung as the representative of the Committee. That initial evaluation by his Department P&T Committee noted several deficiencies, or areas for improvement, in plaintiff Thomasian's overall performance, and most importantly in the area of teaching evaluations. Specifically, the May 10, 2001 performance evaluation states in relevant part "[t]he committee encourages you to improve your teaching evaluations, publication record (especially in journals), and grant activities."

3.     The following year, plaintiff Thomasian received his second annual performance review on May 23, 2002. That performance review also noted difficulties with teaching, and stated in relevant part: "Teaching is unsatisfactory [as measured by the Teaching evaluations per university requirement.]"

4.     Thomasian submitted the requested materials, and a majority of his Department P&T Committee, by a vote of 6-2, recommended the continuation of his employment. Then Chair of Computer Science Department, James A. Mc Hugh, originally voted against reappointment. Dr. McHugh, however, subsequently modified his original negative vote and submitted a favorable minority report. That February 19, 2003 minority reports provides in relevant part:

A significant and diverse majority of the committee recommends the continuation of Prof Thomasian. The attached memo gives the Majority Report. **The Chair voted No on this candidate because of this teaching evaluations. Subsequent to the vote, however, there were important developments. Prof Perl had a very serious talk with Prof Thomasian regarding the P&T committee's critical concerns about his teaching. To my judgment, this intervention by Prof Perl has had an extremely**

**beneficial effect. I subsequently personally discussed the issue of teaching with Prof Thomasian. His attitude and response were every receptive to the guidance that was being provided. In accordance with recommendations from Prof Perl, Prof Geller, and myself, Prof Thomasian has already taken a number of measures to ensure that he interacts more effectively with students in his classes.** Given this very significant turn of events, I am much more optimistic about the outcome on this key requirement for this candidate. I believe at this point that my negative vote has served its purpose and **I am optimistic that there will be significant improvements in his teaching evaluations.**

(emphasis added). Accordingly, Dr. McHugh recites that he specifically notified and discussed the need for improved teaching with plaintiff Thomasian, if he were to someday submit a successful tenure application.

5.      Plaintiff Thomasian has admitted that following his intensive third year review he understood that he needed to improve his teaching, as evidenced by, among other things, improved teaching evaluations, in order to be able to subsequently obtain tenure at NJIT:

> Q.      But you were—you were told that you
>
> A.      Yeah.
>
> Q.      -- needed to improve the teaching evaluations?
>
> A.      Right.
>
> Q.      Correct?
>
> A.      Right.
>
> Q.      That a successful tenure review was going to require improvement in the area of teacher evaluations, correct?
>
> A.      Yes.

(Thomasian Dep., 171).

6.      On February 25, 2003, Stephen Seidman, Dean of the College of Computer Science forwarded the vote of the Department P&T Committee, and his recommendation regarding plaintiff Thomasian's third year review to Provost William C. Van Buskirk.  That report states that "Dr. Thomasian's teaching evaluations at NJIT have consistently been far lower than normal," cites a specific example of well-below average teaching evaluations, and also identifies "several annoying and unfortunate staff interactions with Dr. Thomasian." The report also states "[t]hat in my opinion, Dr. Thomasian's performance over the past three years falls short of what would be expected for a full professor."

7.      The following year on March 31, 2004, plaintiff Thomasian received his fourth year review. That review again notes problems with teaching and states in relevant part "However, Alex needs to improve his interactions with the students."

8.      On March 16, 2005, Narain submitted two performance reviews to the Provost's Office regarding plaintiff Thomasian. The first review states in relevant part "Alex works hard but he needs to have better relationships with his colleagues." The second review is more detailed, but also states in relevant part "[h]owever, he needs to improve his interaction with his students to be more student centered both in and out of the classroom. The more detailed evaluation on March 16, 2005 further notes, that despite plaintiff Thomasian's aggressive submitting of papers, an overall need for plaintiff Thomasian to improve his journal publication record.

9.      In response to Narain Gehani's email request dated October 18, 2004, Thomasian prepared and submitted an approximate twenty-page curriculum vitae in support of his consideration for tenure that year to the Department P&T Committee. On October 25, 2004, Narain Gehani, then Chair of Department of Computing Sciences e-mailed plaintiff Thomasian that the Department P&T Committee would not be advancing his tenure application that year:

> Dear Alex,
>
> I regret to inform you that the P&T Committee has decided not to consider you for tenure this year.  The committee felt that you need to have:
>
> 1. more Journal papers published or accepted for publication 2. more grants 3. **improved teaching evaluations**.
>
> You can apply for tenure consideration next year.

(emphasis added)).

10.     By email dated October 25, 2004, Dr. Thomasian responded to Dr. Gehani's email.  Dr. Thomasian thanked Gehani and stated that he "would try."

11.     Importantly, having received this e-mail plaintiff Thomasian admits that he did not voice any objection to his Department P&T Committee's decision at that time [Thomasian Dep., 198], and that he has no facts or evidence that any member of NJIT's administration, including Dean Stephen Seidman, influenced his Department P&T Committee's vote that year

(Thomasian Dep., 226).[1]

     12.    At least five of the members of his Department P&T Committee at the time of Thomasian's negative tenure review at age 59 were the same individuals who had also voted for his hire at age 54.

     13. While generally both negative and positive recommendations for tenure are reviewed by the President and Provost, following their review, only positive recommendations are forwarded to the Board of Trustees for action .

     14.    Thomasian readily admitted at deposition that he had a number of problematic interactions with his colleagues including, by way of example only: (i) preventing Dr. Frank Shih from having a Ph.D. student transfer from working with plaintiff Thomasian to Dr. Shih [Thomasian Dep. 107-109]; (ii) both making a disfavored remark and preventing Dr. Jospeh Leung from having a Ph.D. student transfer from working with plaintiff Thomasian to Dr. Leung [Thomasian Dep. 112-113], (iii) interfering with Dr. Yehoshau Perl's efforts to secure a position for a student so that the student would work for Hitachi, who had given plaintiff Thomasian a grant [Thomasian Dep. 114-115]; and (iv) delaying the graduation of that same Ph.D. student that Dr. Jason Wang, Dr. Leung and Dr. Perl wanted to graduate earlier [Thomasian Dep. 115-116].    Moreover, plaintiff Thomasian also admitted that subjective issues, such as personality, are an appropriate consideration in the tenure review process:

> Q.    ...Do you believe that in making promotion and tenure decisions -- let's talk about tenure, because you didn't apply for a promotion.
>
>     Do you believe that in making tenure recommendations the faculty committees that render such recommendations are permitted to considerer subjective issues like personality, relationships in terms of, your know, collegial relationships, things of that nature in making a determination or a recommendation on whether or not to support someone for tenure?  Is that an appropriate consideration?
>
> A.    Yes.

(Thomasian Dep., 419).

     15.    Plaintiff Thomasian appealed his Department P&T Committee's vote against his tenure application. That appeal was heard on January 11, 2006, and plaintiff Thomasian was advised that his Department P&T Committee had upheld its original vote on January 20, 2006. That advisement also indicated that the Department Chair, as the representative of the Department P&T Committee, was recommending that plaintiff Thomasian be given a terminal

---

[1] Plaintiff Thomasian actually testified that he did not have any "direct information" that Dean Seidman spoke to, directed, or interacted with his Department P&T Committee assessment in either his fifth and sixth year tenure review (Thomasian Dep., 226). Additionally, he also admitted that he has no evidence that NJIT's administration interjected itself in his tenure review process (Thomasian Dep., 408).

contract for academic year 2006-2007.  As to this determination on appeal, plaintiff Thomasian admits that he has no information that Dean Ahluwalia, as the relevant NJIT administrator, had any input into the appeal process (Thomasian Dep., 402).

16.     At the time plaintiff Thomasian's appeal reached the University P&T Committee, Dr. McHugh, who was then serving on the University P&T Committee testified:

> ...There were problems with the teaching still. There was what looked to me like a total evaporation which I really found surprising for Alex from I believe the people who supported him very strongly originally in the third year....So to me the whole level of support for Alex had evaporated so at that point he couldn't possibly he approved...

(McHugh Dep., 35-36).

17.     Plaintiff Thomasian was notified of the denial of his tenure application and offered a terminal contract on June 8, 2006.  That notification explains that "The University P&T Committee determined that your record in teaching, service and funded research, does not warrant that you be granted tenure."

18.     Thomasian asserted two arguments to the APRC. Id. The first was that his tenure application was tainted by an internal investigation into alleged unprofessional conduct.  As to this investigation, plaintiff Thomasian admitted that he has no proof that the investigation ever played any part in his tenure consideration:

> Q.     Do you have any information, any proof, any documents, anything anybody ever said to you that supports your contention that members of either the university promotion and tenure committee or the departmental committee relied upon or considered the sexual harassment allegations by C.L. in rendering their decision on your promotion application in October of 2005?
>
> A.     I would say no.
>
> Q.     All right.  Thank you.

(Thomasian Dep., 425).

19.     The APRC found that the investigation into unprofessional conduct by Thomasian had no prejudicial effect on plaintiff Thomasian's tenure application, and that his negative record, primarily his negative teaching evaluations, were the reason for his negative tenure review:

> The grievant argues that a graduate student's allegation of sexual harassment against Dr. Thomasian, a charge of which he was exonerated, had an unfair adverse prejudicial effect on his tenure review.  At our first hearing into the case

(April 30, 2007), Dr. Gehani denied that the issue was raised during the Department P&T Committee deliberations. Dr. Geller, who served on that Committee and was a supporter of Dr. Thomasian's candidacy for tenure, acknowledged to us (on May 14) that the Committee was aware of student complaints against Dr. Thomasian but confirmed that the sexual harassment issue was not generally known and was not raised during the tenure discussion. Dr. McHugh assured us (on May 7) that at the University P&T level as well, the issue was not raised and was probably not known, and that he himself did not know about a specific charge of sexual harassment, though he too was aware of general student complaints about Dr. Thomasian.

Because we were persuaded by this testimony that the sexual harassment allegation against Dr. Thomasian had generated no prejudicial effect on the PT review process, we decided not to pursue that aspect of the case and chose not to read the records describing the charge and its resolution.

**We are satisfied that the Department Committee's decision not to recommend Dr. Thomasian for tenure was based on this record, primarily on his negative teaching evaluations, which were recognized and communicated to him as early as May 2001 and which continued to be problematic over the subsequent years of the tenure-track period.**

(emphasis added). Accordingly, all four members of the APRC, including the two union representatives, denied his grievance and there was no minority report.

20.    Plaintiff Thomasian's second argument to the ARPC was that he was denied two opportunities to apply for tenure in violation of NJIT's Faculty Handbook. Initially, NJIT's Faculty Handbook provides in relevant part  "A faculty member with a seven year TTP will be first eligible for tenure consideration in the fifth year." . Plaintiff Thomasian has admitted that he understood that this language creates only the possibility of eligibility for tenure review in the fifth year as opposed to the mandatory tenure review applicable in the penultimate or sixth year (Thomasian Dep., 230-31).

21.    As to Thomasian's argument the ARPC found that:

In his fifth year at NJIT (2004-05), the first year of his tenure eligibility, the Department P&T Committee decided not to recommend Dr. Thomasian for tenure to the University P&T Committee. Dr. Thomasian contends that he was not reviewed for tenure this year. The *Faculty Handbook* implies, but does not state, that tenure-eligible candidates be reviewed since it stipulates that "a negative decision by the department P&T Committee shall not be forwarded to the University P&T Committee in this year." There is no written record of CS Department P&T Committee deliberations. An email from Dr. Gehani to Dr. Thomasian (October 25, 2004) says that the P&T Committee "decided not to consider you for tenure this year," requests more articles and more grants, as well

as "improved teaching evaluations." That this email was copied to the entire Department P&T Committee seems to support Dr. Gehani's testimony that there was a discussion of Dr. Thomasian's candidacy for tenure this year. In fact, Dr. Thomasian replied to that email with the assurance that he "would try" (presumably to address the committee's concerns). Moreover, on March 16, 2005, the Department Chair, Dr. Gehani, wrote a performance evaluation with positive comments about Dr. Thomasian's work ethic and details of his publication activities, which, he says, need improvement.

Regarding his teaching, Dr. Gehani wrote that Dr. Thomasian "needs to improve his interaction with students both in and out of the classroom."

**Despite the lack of "adequate written records" of its deliberations, we are persuaded by testimony and supporting evidence that the CS P&T Department Committee met its essential obligation according to the *Faculty Handbook*. [emphasis in original]**

22. At no point did either of plaintiff Thomasian's two arguments that he advanced to the APRC in anyway relate to his age, and, in fact, at deposition he was unable to point to any connection between the APRC's determination and his age (Thomasian Dep., *passim*).

23. In nearly every year he taught, defendant Thomasian's teaching evaluations averaged in the low 2's and he even received several average scores in the 1's.

24. The key question on NJIT's teaching evaluations is question #13, which asks students to evaluate the overall teaching effectiveness of the instructor. Plaintiff Thomasian scored in the low 2s on this question in nearly every year he taught, and even received several scores in the 1s, including a 1.35. Likewise, Thomasian's mean score with respect to questions ##5-12, which are directed to teaching effectiveness, was in the low to mid 2s for nearly every year he taught . [2]

25. Finally, as stated above, Thomasian was subject to an intensive third year review, which if not successful would have resulted in a terminal year appointment. Following that review measures were put in place in an effort to assist Thomasian in the area of teaching. While Thomasian's overall teaching scores marginally improved in the Fall Semester 2003 [immediately after his talk with McHugh] to 2.71 on question #13, and 3.04 mean on question

---

[2] These questions directed at teaching effectiveness include question #12, which asks students to evaluate the instructor's knowledge of the course material. Id. Thomasian generally scored better on this one factor, but an instructor's knowledge of the course material does not necessarily directly address the issue of teaching effectiveness. Id. If, however, this number is backed out of Thomasian's mean averages for questions ## 5-12, his scores are abysmal, barely coming in above a 2 in nearly every year he taught. Id.

##5-12, by the very next semester [Spring 2004] Thomasian scored an 1.94 on question #13, and his mean for ##5-12 is a mere 2.45

   26. Thomasian has never identified and qualitatively compared himself to a similarly situated younger tenure-track full professor, and/or asserted that this unidentified younger faculty member received tenure but he did not. Rather, plaintiff Thomasian readily explained that the totality of the factors that suggested to him that age played a role in the decision not to grant him tenure were: (1) his belief he was highly paid; (2) his anecdotal observation that there was high turnover [both recently minted junior and experienced senior faculty] in his department; (3) that certain prerequisites to the courses taught by him were eliminated; (4) that a voluntary retirement program was offered to certain faculty [the program was offered on a University-wide basis based upon a years of service requirement]; and (5) his opinion that the members of the Department P&T Committee for the Computer Science Department wanted to limit the number of persons that sat on that Committee [In other words, if he received tenure, he too would have automatically been a member of the committee and that would have increased the number. None of these factors comes even remotely close to establishing that a similarly situated younger full professor was granted tenure at or around the same time that Thomasian was denied tenure.

   27. Defendant will establish through cross-examination of plaintiff's expert, plaintiff, and relevant NJIT rebuttal witnesses that the underlying assumptions of the opinions contained in the expert report as well as the methodology, is not supported by the record evidence. Defendant will also challenge the mitigation efforts of plaintiff.

**8.** **PLAINTIFF'S WITNESSES** (Aside from those called for impeachment purposes, only those witnesses whose names and addresses are listed below will be permitted to testify at trial).

   **A.** **On liability plaintiff intends to call the following witnesses who will testify in accordance with the following summaries:**

   Dr. Alexander Thomasian
   Pleasantville, NY
   - Plaintiff will testify about his hiring, and his successful reviews by peers, including during his third-year review. He will testify about his service on University committees, his supervision of graduate students, his obtaining of grants, and his research and publication record. He will also testify that he received merit increases during all but one year of his period of employment. He will testify about failing to secure records of his fifth-year tenure review. He will testify that he was falsely accused of allowing cheating on an exam. He will also recount an instance of identity theft by a former student, which he maintains was improperly investigated by NJIT; he was also accused by the administration of attribution of a negative comment that appeared in a satirical piece in a student newspaper. He will testify that his performance matched that of his colleagues, and that the negativity generated toward him was based upon the university's efforts to deny him tenure. He observed younger personnel being hired as both adjunct and full-time faculty at lower salaries to fulfill teaching responsibilities in his department.

Dr. Denis Blackmore
NJIT
University Heights, Newark, NJ
A colleague (in the Mathematics Department) and professional friend of plaintiff, who believed that plaintiff was a competent and scholarly member of the faculty. Testimony that his assessment for tenure qualification could entail areas other than teaching, but could include scholarship, research and service.

Dr. Angelo Perna
NJIT
University Heights, Newark, NJ
A colleague and professional friend of plaintiff who served on the University P&T Committee and raised concerns when he learned that the University had no written record of plaintiff's fifth-year tenure review. Testimony that his assessment for tenure qualification could entail areas other than teaching, but could include scholarship, research and service.

Dr. James Geller
NJIT
University Heights, Newark, NJ
A departmental colleague and professional friend of plaintiff who supported plaintiff's some aspects of plaintiff's credentials to warrant tenure.

Dr. Ali Mili
NJIT
University Heights, Newark, NJ
A departmental colleague and professional friend of plaintiff who believed that plaintiff was a qualified scholar, researcher and graduate advisor. Prof. Mili voted to give plaintiff tenure during the 6th year review. Testimony that his assessment for tenure qualification did not entail just teaching, but areas of scholarship, research and service.

Michele Tellefsen
NJIT
University Heights, Newark, NJ
The PSA representative who helped plaintiff to prepare his cases for review by the university appellate tribunals. She was aware of plaintiff's claims concerning his unfair treatment during the periods leading up to tenure review.

Connie Sutton-Falk
NJIT
University Heights, Newark, NJ
An administration employee who advised plaintiff of his right to access his personnel file.

Dr. Narain Gehani
NJIT
University Heights, Newark, NJ

Department chair who failed to maintain a written record of plaintiff's fifth-year tenure review.  Authentication of record/information contained on the "faculty schedule." (Ex. 25)

Ellen Lerner
NJIT
University Heights, Newark, NJ
Administration employee who observed in an email to a colleague, Paula Zigman, that it did not appear that plaintiff had been reviewed for tenure in his fifth year.

Paula Zigman
c/o NJIT
University Heights, Newark, NJ
Administration employee who received the email from Ellen Lerner that it did not appear that plaintiff had been reviewed for tenure in his fifth year.

## B.    Defendants object to the following witnesses for the reasons stated:

<u>Thomasian</u>:  NJIT will object to testimony by Thomasian that NJIT allegedly failed to maintain records of his fifth-year tenure review; that he was falsely accused of allowing cheating on an exam; as to an instance of identity theft by a former student and NJIT's investigation thereof; that he was accused by the administration of attribution of a negative comment that appeared in a satirical piece  in a student newspaper [but not the satirical piece itself]; and that he observed younger personnel being hired as both adjunct and full-time faculty at lower salaries to fulfill teaching responsibilities in his department.  The basis of the objection, as will be set forth in the a motion *in limine*, is prejudicial effect, waste of time, confusion of issues, and relevance.

<u>Blackmore</u>:  NJIT will object to the proffered testimony by Blackmore in its entirety as irrelevant, potentially prejudicial, and a waste of resources. Any opinion sought from Dr. Blackmore would be unsupported lay opinion as he was not even in Thomasian's department and the information being sought to be put into evidence is irrelevant and prejudicial.

<u>Perna</u>:  NJIT will object to the proffered testimony by Perna in its entirety as irrelevant and potentially prejudicial, confusing and a waste of resources.

<u>Tellefsen</u>:   NJIT will object to the proffered testimony by Tellefsen, beyond the determination of the Academic Performance Review Board relating to Thomasian's tenure denial.

<u>Sutton-Falk</u>: NJIT will object to the proffered testimony by Sutton-Falk in its entirety  as irrelevant and potentially prejudicial, confusing and a waste of resources.

<u>Gehani</u>:  As will be stated in NJIT's *in limine* motions, NJIT objects to the proffered testimony by Gehani regarding the maintenance of a written record of Thomasian's fifth year tenure review as irrelevant and potentially prejudicial, confusing and a waste of resources. NJIT objects to the proffered testimony regarding the faculty schedule on the basis that he is neither the author nor custodian of same.  Any opinion sought from Dr. Gehani would be unsupported lay opinion and the information being sought to be put into evidence is irrelevant and prejudicial.  Also, NJIT objects to this proffered testimony as lacking in foundation.

<u>Lerner</u>:  NJIT objects to the proffered testimony of Lerner on the basis that the statements are hearsay and not party admissions.

<u>Zigman</u>:  NJIT objects to the proffered testimony of Zigman on the basis that the statements are hearsay and not party admissions.

**9.    DEFENDANT'S WITNESSES** (See instructions above).

**A.    On liability plaintiff intends to call the following witnesses who will testify in accordance with the following summaries**

**1.    Stephen B. Seidman**
Texas State University-San Marcos
601 University Drive
San Marcos, Texas 78666

Dr. Seidman, former Dean of the School of Computing Sciences, will testify to his knowledge regarding some of the annual reviews and reappointments of Dr. Thomasian, including his intensive third year review, and his input and evaluation as Dean that formed part of that review. Dr. Seidman will also testify to the merit award process and plaintiff Thomasian's award of merit step increases.  Dr. Seidman will also testify as to his knowledge of Department of Computer Science's P&T Committee's negative tenure review during plaintiff Thomasian's fifth year of service, or academic year AY 2004-2005, and sixth year of service or AY 2005-2006.  Additionally, Dr. Seidman will testify to the extent he has knowledge of plaintiff Thomasian's appeals and grievances following his second negative tenure review. Dr. Seidman will also testify as to his knowledge of negative interactions between Thomasian and his colleagues in his department.

**2.    Narain Gehani**
New Jersey Institute of Technology
University Heights
Newark, NJ  07102-1982

Dr. Gehani, as a tenured faculty member in the College of Computing Science, and Chair of the Department of Computer Science, will testify as to his knowledge regarding some of the annual reviews and reappointments of Dr.

Thomasian.  Dr. Gehani will also testify regarding the Department of Computer Science's P&T Committee's fifth annual review of plaintiff Thomasian and his communications with Thomasian about that review.  Dr. Gehani will also testify to the merit award process and plaintiff Thomasian's award of merit step increases. Dr. Gehani will also testify to his knowledge of Department of Computer Science's P&T Committee's negative tenure review during plaintiff Thomasian's fifth year of service, or academic year ("AY") 2004-2005 [including the feedback that he provided to plaintiff Thomasian following that review], and sixth year of service or AY 2005-2006.  Additionally, Dr. Gehani will testify as to his knowledge of plaintiff Thomasian's appeals and grievances following his second negative tenure review.   Dr. Gehani will also testify as to his knowledge of negative interactions between Thomasian and his colleagues in his department.

3.   **Joseph Leung**
New Jersey Institute of Technology
University Heights
Newark, NJ  07102-1982

Dr. Leung, as former Chair of the Department of Computer Science, will testify regarding the hiring of plaintiff Thomasian, including the decision, manner, and terms and condition under which plaintiff Thomasian was hired.  Dr. Leung, as tenured faculty member in the College of Computing Science, and a member of the Department of Computer Science's P&T Committee, will testify to his knowledge regarding the annual reviews and reappointments of Dr. Thomasian, including his intensive third year review.  On May 10, 2001, at the end of plaintiff Thomasian's first year of service, Dr. Leung communicated the Department of Computer Science's P&T Committee's first annual review of plaintiff Thomasian to him by sending plaintiff Thomasian an e-mail encouraging him "to improve your teaching evaluations" as well as improve his publication record and grant activities. Dr. Leung will also testify as to the Department of Computer Science's P&T Committee's negative tenure review during plaintiff Thomasian's fifth year of service, or academic year ("AY") 2004-2005 [and the motion that Dr. Leung made to delay that  tenure review for one year], and sixth year of service or AY 2005-2006.   Dr. Leung will also testify as to his knowledge of negative interactions between Thomasian and him and their other colleagues in his department.

3.   **William Van Buskirk**
New Jersey Institute of Technology
University Heights
Newark, NJ  07102-1982

Dr. VanBuskirk as former Provost of NJIT will testify as to the hiring of Thomasian and renewal of plaintiff Thomasian's annual term appointment at NJIT, including the change in his tenure track appointment to a seven year tenure

track position.   Dr. VanBuskirk will also testify as to his knowledge regarding plaintiff Thomasian's intensive third year review.

4. **John Poate**
New Jersey Institute of Technology
University Heights
Newark, NJ  07102-1982

Dr. Poate, as former Dean of the School of Computing Sciences, will testify regarding the hiring of plaintiff Thomasian, including his "real reservation[s]" about that hiring recommendation.

5. **James A. McHugh**
New Jersey Institute of Technology
University Heights
Newark, NJ  07102-1982

Dr. McHugh, a member of the Department of Computer Science's P&T Committee, will testify as to the performance and annual reviews of Dr. Thomasian and his reappointments, including the intensive third year review. Specifically, on or about the same time that plaintiff Thomasian was subject to his intensive third year review, Dr. McHugh gave him a negative vote, and also subsequently met with and spoke to Dr. Thomasian about his teaching and interaction problems.  Dr. McHugh will also testify as to the Department of Computer Science's P&T Committee's negative tenure review during plaintiff Thomasian's fifth year of service, or academic year ("AY") 2004-2005. Dr. McHugh will also testify to Thomasian's performance during his sixth year of service and as to the University P&T Committee's review and rejection of Thomasian tenure application and appeal in AY 2005-2006.   Dr. McHugh will also testify as to his knowledge of negative interactions between Thomasian and him and their other colleagues in his department.

6. **Priscilla Nelson**
New Jersey Institute of Technology
University Heights
Newark, NJ  07102-1982

Dr. Nelson, as former Provost, will testify regarding   plaintiff Thomasian's negative tenure review during his fifth year of service, or academic year AY 2004-2005, and sixth year of service or AY 2005-2006, and the University's decision to offer plaintiff Thomasian a terminal contract for AY 2006-2007. Additionally, Dr. Nelson will testify as to plaintiff Thomasian's appeals and grievances following his second negative tenure review.  Dr. Nelson will also testify as to the requirements and time-lines for the tenure review process during the relevant years.

7. **Daljit Ahluwalia**
   New Jersey Institute of Technology
   University Heights
   Newark, NJ  07102-1982

   As former Acting Dean of the College of Computing Sciences, Dr. Ahluwalia will testify as to his knowledge of plaintiff Thomasian's appeals and grievances following his second negative tenure review, and has particular information relating to the Step I grievance brought by plaintiff Thomasian following NJIT's denial of tenure.

8. **All Members of the Department of Computer Sciences P&T Committee from AY2001-2006, including but not limited to Jason Wang, Frank Shih, Joseph Leung, James McHugh, James Geller and Yehoshua Perl**
   New Jersey Institute of Technology
   University Heights
   Newark, NJ  07102-1982

   These Committee members will testify as to their respective knowledge regarding the annual reviews and reappointments of Dr. Thomasian, including his intensive third year review. They will testify as to the Department of Computer Science's P&T Committee's negative tenure review of plaintiff Thomasian in academic year AY 2004-2005, and AY 2005-2006, which would include their review of his overall progress and performance at the University in light of the relevant criteria for tenure.

9. **Members of the Department of the University P&T Committee from AY2005-2007 including but not limited to  Michael Mostoller and James McHugh.**
   New Jersey Institute of Technology
   University Heights
   Newark, NJ  07102-1982

   These Committee members will testify as to their knowledge regarding the University P&T's Committee negative tenure review of plaintiff Thomasian in AY 2004-2005, and/or AY 2005-2006, which would include their review of his overall progress and performance at the University in light of the relevant criteria for tenure.

10.  **Members of the University Academic
Process Review Committee Who Heard
Plaintiff Thomasian's Denial of Tenure
Grievance including but not limited to
Dr. Dhawan, Dr. Lynch, Dr. Perna and Dr. Schring**
New Jersey Institute of Technology
University Heights
Newark, NJ  07102-1982

These Committee members will testify as their knowledge regarding the
information submitted to them and their denial of plaintiff Thomasian's
grievance.

*No later than 14 days before trial, the defendant shall provide the names of the witness*

**Plaintiffs object to the following witnesses for the reasons stated:**

*who are testifying for category Nos 8,9, and 10*

-John Poate – objection to testimony because lacking relevance.

10.  **EXPERT AND SPECIALIZED LAY OPINION WITNESSES** (No expert or
specialized lay opinion witness offering scientific, technical or other specialized knowledge will
be permitted to testify at trial unless listed below. A summary of the expert's qualifications and a
copy of his/her report must be provided for the Court's review at the pretrial conference.  Said
summary shall be read into the record at the time he/she takes the stand, and no opposing counsel
shall be permitted to question his/her qualifications unless the basis of an objection is set forth
herein).  A copy of the plaintiff's expert's report will be retained in Chambers file and is
available for inspection.

A.   Plaintiff's expert witnesses are: Frank Tinari, PhD

B.   Defendant's objections to the qualifications of plaintiff's expert are:  Not
applicable.

C.   Defendant's expert witnesses are: None.

D.   Plaintiff's objections to the qualifications of defendant's experts are:  Not
applicable.

11.  **PLAINTIFF'S DEPOSITIONS (List, by page and line, all deposition testimony to
be offered into evidence.  All irrelevant and redundant matters and all colloquy
between counsel must be eliminated, unless ruled relevant.  Deposition testimony to
be used solely for impeachment purposes need not be listed.)**

12. **DEFENDANT'S DEPOSITIONS (List, by page and line, all deposition testimony to be offered into evidence. All irrelevant and redundant matters and all colloquy between counsel must be eliminated, unless ruled relevant. Deposition testimony to be used solely for impeachment purposes need not be listed.)**

NJIT DEPOSITION DESIGNATIONS

1.   Alexander Thomasian

    79:22-25
    80:1-2
    94:7-25
    95:1-6
    107:14-25
    108:1-25
    109:1-18
    112:6-25
    113:1-8
    117:15-25
    118:1-22
    171:3-25
    198:9-13
    279:13-18
    345:25
    346:1-25
    347:1-7
    386:1-22
    392:1-8
    393:25
    394:1-16
    402:13-16
    409:16-25
    410:1-2
    419:15-15
    420:1-11

Other deposition testimony will be offered only if the witness is unavailable as defined in Fed. R. Evid. 804 and Fed. R. Civ. P. 32. If defendant intends to assert a witness is unavailable, and will seek to offer the witness' deposition testimony, then no later than fourteen days before trial the defendant shall provide proof of unavailability:

2.   Stephen Seidman

    8:9-12
    9:2-8
    9:17-22

12:21-25
13:1-8
15:24-25
16:1-3
32:21-25
33:1-18
34:21-25
35:1-17
35:22-25
36:1-16
40:9-25
41:1-4
41:16-25
42:1-25
43:1-25
44:1-20
47:1-9
53:1-4
74:17-19
150:5-9
152:22-25
153:1-25
154:1-16

3.      Narain Gehani

11:7-8
12:12-15
13:3-25
14:1-25
23:15-25
24:1-11
27:22-25
28:1-4
29:23-25
30:1-25
31:1-25
32:1-22
40:24-25
41:1-19
45:23-25
46:1-25
47:1-9
64:13-25
65:1-25
66:1

69:7-16
90:10-25
91:1-5
93:8-23
96:4-10
99:21-25
100:1
108:16-25
109:1-9
117:13-25
118:1-14

4.   James McHugh

8:11-25
9:8-25
10:1-25
11:1-4
15:20-25
16:1-25
17:1-7
19:23-25
20:1-20
24:2-7
33:8-25
34:1-25
35:1-25
36:1-25
43:8-25
44:11-25
45:1-2

5.   Priscilla Nelson

7:12-17
11:5-25
12:1-16
15:9-25
18:21-25
19:1-11
21:6-18
33:5-9
36:3-23
42:12-25
43:1-10

6.      Ali Mili

      5:25
      6:1-4
      25:19-23
      29:15-18

**13.**    **PLAINTIFF'S EXHIBITS** (Except for exhibits the need for which could not reasonably have been foreseen or which are used solely for impeachment purposes, only the exhibits set forth on the exhibit list attached hereto may be introduced at trial. Any objection to any exhibit, and the reason for said objection, must be set forth below or it shall be deemed waived. All parties hereby agree that it will not be necessary to bring in the custodian of any exhibit as to which no such objection is made).

    A.    Plaintiff intends to introduce into evidence the exhibits listed on the attached exhibit list (list by number with a description of each):

        **See attached.**

    B.    Defendant objects to the introduction of plaintiff's exhibits (set forth number of an exhibit and grounds for objection):

| Exhibit No. | Objection |
|---|---|
| 25- Faculty Schedule | Relevance-- Fed. R. Of Evid. 401<br><br>Jury Misleading, Issue Confusion and Waste of Time-- Fed. R. Of Evid. 403<br><br>As to any testimony from same- lay opinion without sufficient foundation pursuant to FRE 701. |
| 29-E-mail Zigman to Lerner | Relevance-- Fed. R. Of Evid. 401<br><br>Jury Misleading, Issue Confusion and Waste of Time-Fed. R. Of Evid. 403<br><br>Hearsay- Fed. R. Of Evid. 802 |
| 31-- E-mail to Gang Fu to Thomasian 12/17/04 | Relevance-- Fed. R. Of Evid. 401<br><br>Jury Misleading, Issue Confusion and Waste of Time-- Fed. R. Of Evid. 403 |

|  |  |
|---|---|
| 32- Scanned version of recommendation letter for Gang Fu by Thomasian | Relevance-- Fed. R. Of Evid. 401<br><br>Jury Misleading, Issue Confusion and Waste of Time-- Fed. R. Of Evid. 403 |
| 41—E-mail from Gehani to Thomasian Student Teaching | Relevance-- Fed. R. Of Evid. 401<br><br>Jury Misleading, Issue Confusion and Waste of Time-- Fed. R. Of Evid. 403 |
| 46-Email from Stern to Tellefsen RE: scanned letter 1/18/05 | Relevance-- Fed. R. Of Evid. 401<br><br>Jury Misleading, Issue Confusion and Waste of Time-- Fed. R. Of Evid. 403 |
| 50--Email Sutton-Falk to Thomasian RE: personnel file | Relevance-- Fed. R. Of Evid. 401<br>Hearsay—Fed. R. Of Evid. 802<br><br>Jury Misleading, Issue Confusion and Waste of Time-- Fed. R. Of Evid. 403 |
| 51--Email RE: cheating 5/1/07 | Relevance-- Fed. R. Of Evid. 401<br><br>Jury Misleading, Issue Confusion and Waste of Time-- Fed. R. Of Evid. 403 |

**14.   DEFENDANT'S EXHIBITS**

A.   Defendant intends to introduce into evidence the exhibits listed on the attached exhibit list (list by number with a description of each):

**See attached**

B.   Plaintiff objects to the introduction of defendant's exhibits (set forth number of exhibit and grounds for objection):

| EXHIBIT NO./Description | GROUNDS FOR OBJECTION |
|---|---|
| 24 Thomasian's 2001-07 Student evaluations | Fed. R. Evid. 403, misleading, confusing to jury and Fed. R. Evid. 611- lack of foundation |

(COPIES OF EXHIBITS ARE TO BE MADE FOR OPPOSING COUNSEL, AND A BENCH BOOK OF EXHIBITS IS TO DELIVERED TO THE JUDGE AT THE START OF TRIAL. IF COUNSEL DESIRES TO DISPLAY EXHIBITS TO THE JURY, SUFFICIENT COPIES

SHOULD BE AVAILABLE TO PROVIDE EACH JUROR WITH A COPY; ALTERNATIVELY, ENLARGED PHOTOGRAPHIC OR PROJECTED COPIES MAY BE USED.)

**15.   PLAINTIFF'S LEGAL ISSUES:**

Whether defendant deprived plaintiff of his rights for fair consideration of his tenure application in his sixth year by violating its own record-retention policy in not retaining any written records of his fifth-year tenure review.

Whether the practice of hiring younger faculty to provide the same or similar teaching services at a lower cost to defendant during the period of plaintiff's employment, can demonstrate a pattern or practice of age discrimination by defendant.

**16.   DEFENDANT'S LEGAL ISSUES:**

1.   Whether plaintiff Thomasian has established a *prima facie* case of age discrimination?;

 A.   Whether a denial of a tenure claim requires proof that a similarly situated younger applicant was granted tenure, or other proof that a plaintiff was denied tenure in circumstances justifying an inference of discrimination?.

 B.   Whether Thomasian has presented any comparator evidence sufficient to establish a prima facie case of tenure denial because of age?.

 C.   Whether Thomasian has proffered evidence of any circumstances justifying an inference of age discrimination, and whether he has rebutted NJIT's strong evidence to the contrary?

2.   Whether plaintiff Thomasian has proffered sufficient evidence such that a finder of fact could reasonably determine that NJIT's articulated reasons for denying him tenure are false and that age was the real reason [directed verdict], and whether a preponderance of the credible evidence show that NJIT's articulated reasons for denying plaintiff Thomasian tenure are false and that age was the real reason [ultimate issue]?:

 A.   Whether plaintiff Thomasian improperly seeks to shift his burden of production as to pretext to NJIT by arguing that NJIT has not come forward with other individuals who were denied tenure based upon negative teaching evaluations?

        B.        Whether Thomasian's assertion that his teaching was satisfactory ignores  his own deposition testimony and record admission that they were not?

        C.        Whether Thomasian's unsupported speculation as to NJIT's reasons for denying him tenure, even if true, which they are not, are permissible evidence of actionable age discrimination?

**17.**    **MISCELLANEOUS** (Set forth any other matters which require action by, or should be brought to the attention of the Court).

**18.**    **JURY TRIALS** – The following shall be submitted to the Court not later than <u>March 15, 2010</u>.

        A.        Each side shall submit to the Judge and to opposing counsel a trial brief or memorandum in accordance with Local Civil Rule 7.2, with citations to authorities and arguments in support of its position on all disputed issues of law. In the event a brief shall not be filed, the delinquent party's complaint or defense may be stricken.

        B.        Counsel shall submit joint to the Court a single set of: proposed preliminary and final jury instructions as to which the parties are in agreement. Counsel for each party shall also submit to the Judge, with a copy to opposing counsel, written requests for additional instructions to the jury, only as to which the parties certify that they have not been able to agree. Supplemental requests for instructions as to facts or legal issues that could not reasonably have been anticipated before trial may be submitted at any time prior to argument to the jury. All requests for instructions shall be plainly marked with the name and number of the case, shall contain citations of supporting authorities, if any, and shall designate the party submitting same. In the case of multiple requests by a party, these shall be numbered in sequence and each request shall be on a separate sheet of paper.

        C.        If any hypothetical questions are to be put to an expert witness on direct examination, these shall be submitted to the Judge and opposing counsel.

        D.        Counsel shall jointly submit to the Court a single set of proposed voir dire questions as to which the parties are in agreement. Counsel shall also submit to the Judge, with a copy to opposing counsel, any additional proposed voir dire as to which the parties certify that they have not been able to reach agreement.

        E.        Counsel shall jointly submit to the Court a single proposed special verdict sheet.

F.   Three copies of a joint exhibit list and two joint bench books of trial exhibits shall be submitted to the Court.

G.   Counsel shall provide the Court with a copy of the jury instructions and proposed verdict sheet on a computer disk in a WordPerfect readable format.

~~19.   **NON-JURY TRIALS**   Not later than _____:~~

~~A.   Each side shall submit to the Judge and opposing counsel a trial brief of memorandum in accordance with Local Civil Rule 7.2B with citation to authorities and arguments in support of its position on all disputed issues of law. In the event a brief shall not be filed, the delinquent party's complaint or defense may be stricken.~~

~~B.   Each side shall submit to the Judge and other counsel proposed written findings of fact and conclusions of law.   There is reserved to counsel the right to submit additional proposed findings of fact and conclusions of law during the course of the trial on those matters that cannot reasonably be anticipated.~~

~~C.   If any hypothetical questions are to be put to an expert witness on direct examination, they shall be submitted to the Judge and to opposing counsel.~~

~~D.   Counsel shall provide the Court with a copy of its proposed findings of fact and conclusions of law on a computer disk in a WordPerfect readable format.~~

**20.   TRIAL COUNSEL**

**Arnold Shep Cohen, Esq. (Oxfeld Cohen, P.C.) for plaintiff Thomasian**

**Tricia B. O'Reilly, Esq. (Connell Foley LLP) for defendant NJIT**

**21.   BIFURCATION: Plaintiff's claim for punitive damages is bifurcated by statute and rule.**

The Punitive Damages Act permits defendant NJIT to bifurcate the compensatory and punitive damages phases of trial, and to bar the presentation of punitive damages testimony and evidence until such time as a jury return a special verdict finding liability for more than nominal damages. See N.J.S.A. 2A:15-5.13.

**22.   ESTIMATED LENGTH OF TRIAL**

**10-12 days**

**AMENDMENTS TO THIS PRETRIAL ORDER WILL NOT BE PERMITTED UNLESS THE COURT DETERMINES THAT MANIFEST INJUSTICE WOULD RESULT IF THE AMENDMENT IS DISALLOWED.   THE COURT MAY FROM TIME TO TIME**

**SCHEDULE CONFERENCES AS MAY BE REQUIRED EITHER ON ITS OWN MOTION OR AT THE REQUEST OF COUNSEL.**

Jennifer L. Gottschalk
Oxfeld Cohen, P.C.
ATTORNEY FOR PLAINTIFF

Tricia B. O'Reilly, Esq.
CONNELL FOLEY LLP
ATTORNEYS FOR DEFENDANT
NEW JERSEY INSTITUTE OF TECHNOLOGY

HONORABLE PATTY SHWARTZ
UNITED STATES MAGISTRATE

DATED: March 5, 2010

(EXHIBIT LIST FOLLOWS)

34

**Thomasian v. NJIT**
**Case No. 08-cv-2218 (FSH/PS)**
Exhibit List

| Trial exhibit # | Deposition Exhibit # | Offered by | Bates Ranges | Description of Document | Plaintiff's Objections | Defendant's Objections | Prior Rulings Re: Exhibit | Date Offered into evidence | Date admitted into evidence |
|---|---|---|---|---|---|---|---|---|---|
| 1 | AT-3 | Defendant | NJITPROD 00118-00119 | Ltr Agreement from William C. Van Buskirk to Alexander Thomasian | | | None | | |
| 2 | | Defendant | NJITPROD 00491-00659 | Nov. 6, 2003 NJIT Faculty Handbook | | | None | | |
| 3 | | Defendant | NJITPROD 00041-00042 | Undated Promotion and Tenure form | | | None | | |
| 4 | AT-4 | Defendant | NJITPROD 00009 | March 29, 2002 memo from Joseph Y. Leung to John Poate | | | None | | |
| 5 | AT-8 | Defendant | NJITPROD 00122 | May 23, 2002 email from James McHugh to Alexander Thomasian | | | None | | |

1

2290255-01

| | | | | | | None | | |
|---|---|---|---|---|---|---|---|---|
| 6 | AT-10 | Defendant | 000519 | September 5, 2002 memo from William C. Van Buskirk to Alexander Thomasian | | None | | |
| 7 | AT-12 | Defendant | NJITPROD 00001 | February 12, 2003 Third-Year Review form for Alexander Thomasian | | None | | |
| 8 | AT-13 | Defendant | NJITPROD 00004 | February 19, 2003 interoffice memo to William C. Van Buskirk | | None | | |
| 9 | AT-11 | Defendant | 00010-12 | January 12, 2003 interoffice memo from Computer Science Chair Minority Report to University P&T Committee | | None | | |

2

2290255-01

| | | | | | None | | |
|---|---|---|---|---|---|---|---|
| 10 | AT-14 | Defendant | NJITPROD 00105 | May 14, 2003 Letter agreement from William C. Van Buskirk to Alexander Thomasian executed by Alexander Thomasian on June 5, 2003 | None | | |
| 11 | NG-1 | Defendant | 00204 | March 31, 2004 memo from Narain Gehani to the Provost Office | None | | |
| 12 | NG-8 NG-8A | Defendant | 00206-207 | March 16, 2005 memos from Narain Gehani to the Provost | None | | |
| 13 | AT-18 | Defendant | | October 18, 2004 email from Artur Czumaj to Narain Gehani and copied to Alexander Thomasian | None | | |

3

| | | | | | | |
|---|---|---|---|---|---|---|
| 14 | AT-16 | Defendant | 00652 | June 6, 2007 email from Michelle Tellefsen to Alexander Thomasian | | None |
| 15 | AT-27 | Defendant | NJITPROD 1202-03 | December 20, 2005 email from Alexander Thomasian to Narain Gehani | | None |
| 16 | AT-30 | Defendant | 00572 | January 20, 2006 letter from Narain Gehani to Alexander Thomasian | | None |
| 17 | AT-31 | Defendant | NJITPROD 131-132 | January 27, 2006 email from Paula Zigman to Alexander Thomasian | | None |
| 18 | | Defendant | NJITPROD 00043 | April 6, 2006 letter from Michael Mostoller to Alexander Thomasian | | None |

4

2290255-01

| | | | | | | |
|---|---|---|---|---|---|---|
| 19 | AT-23 | Defendant | NJITPROD 00084 | June 8, 2006 letter agreement from Priscilla P. Nelson to Alexander Thomasian executed by Alexander Thomasian on June 13, 2006 | | None |
| 20 | AT-37 | Defendant | 000133 | May 4, 2006 memo from Alexander Thomasian to Daljit Ahluwalia | | None |
| 21 | AT-39 | Defendant | 000165-174 | April 30, 2007 NJIT PSA/AAUP submission on behalf of Alexander Thomasian | | None |

5

2290255-01

| | | | | | |
|---|---|---|---|---|---|
| 22 | AT-25 | Defendant | NJITPROD 00328-455 | Relevant pages from the July 1, 2003 to June 30, 2007 Collective Negotiations Agreement between NJIT and PSA | None |
| 23 | AT-40 | Defendant | NJITPROD 127-129 | May 24, 2007 memo from the APRC (Professors Dhawan, Lynch, Perna and Schuring) to Holly Stern and Michelle Tellefsen | None |
| 24 | AT-26 | Defendant | NJITPROD 01279-02138 | Alexander Thomasian's 2001-07 NJIT's Student Evaluation forms | Fed. R. Evid. 403-misleading, confusing to jury; and Fed. R. Evid. 611 - Lack of foundation | None |

6

2290255-01

| | | | | | | |
|---|---|---|---|---|---|---|
| 25 | | Plaintiff | NJITPROD 02206-34 | Faculty Schedule | Fed. R. Evid. 401-Relevance; Fed R. Evid. 403 – Jury misleading, confusion and waste of time | None |
| 26 | AT-2 | Plaintiff | | Dr. Alexander Thomaisan's Curriculum Vitae | | None |
| 27 | NG-13 | Plaintiff | | Email from Alexander Thomasian to Narain Gehani | | None |
| 28 | NG-2 | Plaintiff | | Email from Narain Gehani to Daljit Ahluwalia | | None |

7

2290255-01

| 29 | NG-18 | Plaintiff | | Email Paula Zigman to Ellen Lerner | | Fed. R. Evid. 401- relevance, jury misleading, issue confusion and waste of time; Fed. R. Evid. 802 | Ruling by Judge Shwartz on 10/22/09 permitting plaintiff to develop evidence of equitable estoppel during case in chief | | |
| 30 | | Plaintiff | 000074 | December 10, 2004 Faculty Merit Letter from Bloom to Alexander Thomasian | | | None | | |
| 31 | | Plaintiff | 000075 | December 17, 2004 email from Gang Fu to Alexander Thomasian | | Fed. R. Evid. 401- relevance; Fed. R. Evid. 403- Jury misleading, issue confusion and waste of time | None | | |

8

2290255-01

| | | | | | |
|---|---|---|---|---|---|
| 32 | Plaintiff | 000077-78 | Scanned version of recommendation letter for Gang Fu by Alexander Thomasian | Fed. R. Evid. 401- relevance; Fed. R. Evid. 403- jury misleading, issue confusion and waste of time. | None |
| 33 | Plaintiff | 000194 | May 10, 2001 memo re: annual performance evaluation of Alexander Thomasian | | None |
| 34 | Plaintiff | 000195 | May 29, 2001 letter from William C. Van Buskirk to Alexander Thomasian | | None |
| 35 | Plaintiff | 000198 | July 2, 2002 letter from William C. Van Buskirk to Alexander Thomasian | | None |

9

2290255-01

| | | | | | |
|---|---|---|---|---|---|
| 36 | Plaintiff | 000202 | February 10, 2003 memo re: Third-Year review of Alexander Thomasian | | None |
| 37 | Plaintiff | 000204 | March 21, 2004 performance evaluation of Alexander Thomasian by Narain Gehani | | None |
| 38 | Plaintiff | 000205 | May 20, 2004 letter to Alexander Thomasian | | None |

| | | | | | |
|---|---|---|---|---|---|
| 39 | Plaintiff | 000208 | May 18, 2005 letter from Priscilla P. Nelson to Alexander Thomasian | | None |
| 40 | Plaintiff | 000207 | March 16, 2005 memo from Narain Gehani to Alexander Thomasian re: performance evaluation | | None |

10

2290255-01

| | | | | |
|---|---|---|---|---|
| 41 | Plaintiff | 000513 | Email from Narain Gehani to Alexander Thomasian re: student cheating | Fed. R. Evid. 401-relevance; Fed. R. Evid. 403-jury misleading, issue confusion and waste of time | None |
| 42 | Plaintiff | 000330 | "Interview" of Alexander Thomasian | | None |
| 43 | Plaintiff | 000520 | January 15, 2003 email from Frank Shih to Alexander Thomasian re: service on MS Curriculum Committee | | None |
| 44 | Plaintiff | 000521 | Letter from Joseph Y. Leung to Alexander Thomasian re: service on Faculty Recruiting Committee | | None |

11

2290255-01

| | | | | | |
|---|---|---|---|---|---|
| 45 | | Plaintiff | 000522 | Letter from Ali Mili to Alexander Thomasian re: service on Chair Search Committee | None |
| 46 | | Plaintiff | 000524 | February 11, 2003 email from James McHugh to Alexander Thomasian re: merit increase | None |

| | | | | | |
|---|---|---|---|---|---|
| 47 | | Plaintiff | 000534 | January 18, 2005 email from Holly Stern to Michelle Tellefsen re: scanned letter | Fed. R. Evid. 401-relevance; Fed. R. Evid. 403-jury misleading, issue confusion and waste of time |
| 48 | | Plaintiff | 000560 | October 25, 2004 email from Narain Gehani to Alexander Thomasian re: denial of tenure | None |
| 49 | | Plaintiff | 000571 | December 12, | None |

12

2290255-01

| | | | | |
|---|---|---|---|---|
| | | 2005 letter from Priscilla P. Nelson to Alexander Thomasian re: merit step increase | | |
| 50 | Plaintiff | 000574 | Email from Connie Sutton-Falk to Alexander Thomasian re: access to personnel file | Fed. R. Evid. 401-relevance; Fed. R. Evid. 403 Jury misleading, issue confusion, waste of time. | Ruling by Judge Shwartz on 10/22/09 permitting plaintiff to develop evidence of equitable estoppel during case in chief. |

| | | | | |
|---|---|---|---|---|
| 51 | Plaintiff | 000583 | May 1, 2007 email re: cheating on exam | Fed. R. Evid. 401-relevance; Fed. R. Evid. 403 Jury misleading, issue confusion, waste of time. | |
| 52 | Defendant | 000003 | P&T Allocation Table dated 11/3/2006 with handwritten notes indicating totals (rebuttal purposes | | None |

13

2290255-01

| | | | | | |
|---|---|---|---|---|---|
| 53 | Defendant | 000004 | Fiscal Year 2006-07 table of Faculty Merit Awards (rebuttal purposes only) | | None |
| 54 | Defendant | NJITPROD0 2796-97 | Memo to S. Seidman from N. Gehani dated 10-17-03 re: Merit Steps | | None |
| 55 | Defendant | NJITPROD0 2798-99 | Memo to S. Seidman from N. Gehani dated 11-16-04 re: Merit Evaluation and Steps Awarded & Steps for Y. Perl | | None |

14

| | | | | | |
|---|---|---|---|---|---|
| 56 | Defendant | NJITPROD0 2800 | Computer Science FY 2003 – 2004 Faculty Merit | | None |
| 57 | Defendant | NJITPROD0 2801 | Computer Science FY 2004 – 2005 Faculty Merit | | None |
| 58 | Defendant | NJITPROD0 2802 | Department of Computer Science – Faculty Merit FY 06 Withdrawn | | None |
| 59 | withdrawn | | | | |
| 60 | Defendant | NJITPROD 01183 | Email from Daljit Ahluwalia to Narain Gehani May 13, 2006 (rebuttal purposes only) | | None |
| 61 | Defendant | NJITPROD 0169 | January 18, 2005 email from Joseph Y. Leung to Narain Gehani (rebuttal purposes only) | | None |
| 62 | Defendant | NJITPROD 02764-67 | September 27, 2004 Memo to Chair, University P&T Committee from Joel Bloom (rebuttal purposes only) | | None |

15

| | | | | | | |
|---|---|---|---|---|---|---|
| 63 | | Defendant | NJITPROD 02768-78 | Joel Bloom Memo September 21, 2004 re: Promotion and Tenure Consideration 2004-05, Memo/Instructions regarding dossier preparation for promotion and tenure considerations, required curriculum vitae format promotion and tenure (rebuttal purposes only) | | None |
| 64 | | Defendant | NJITPROD 02779-2795 | Memo to Chair, University P&T from P. Nelson 9/1/05, Memo/Instructions regarding Dossier preparation for Promotion and Tenure Considerations (rebuttal purposes only) | | None |

16

2290255-01

| | | | | | | |
|---|---|---|---|---|---|---|
| 65 | Defendant | NJITPROD 02193-95 | Email from J. Bloom to Jack Gentul 3/18/05 re: cheating complaint (rebuttal purposes only) | | None | |
| 66 | Defendant | NJITPROD 02196 | Email from Alexander Thomasian to Jack Gentul and N. Gehani 5/13/05 regarding cheating complaint (rebuttal purposes only) | | None | |
| 67 | Defendant | NJITPROD 02197-2199 | Email marked "redacted" from N. Gehani to A. Thomasian 3/18/05 regarding cheating complaint (rebuttal purposes only) | | None | |

17

2290255-01

| # | Party | Doc No. | Description | Objections | | None |
|---|---|---|---|---|---|---|
| 68 | Defendant | NJITPROD 02200-03 | Email marked "redacted" from Jack Gentul to Urs Ganchat 3/16/05 regarding cheating complaint (rebuttal purposes only) | | | None |
| 69 | Defendant | NJITPROD 02204 | Email marked "redacted" from Jack Gentul to S. Seidman and N. Gehani 3/11/05 regarding cheating complaint (rebuttal purposes only) | | | None |
| 70 | Defendant | NJITPROD 1233-47 | Faculty Separation Incentive Program (rebuttal purposes only) | | | None |
| 71 | Defendant | | Chart summarizing Alexander Thomasian teaching evaluations by semester | Fed. R. Evid. 403 – confusion to jury; Fed. R. Evid. 611- lack of foundation | | None |

18

2290255-01

| 72 | AT-3 | Defendant | NJITPROD 00019 | Offer letter dated April 18, 2000 | | None | | |
| 73 | AT-5 | Defendant | NJITPROD 00113 | May 10, 2001 Annual Performance Evaluation | | None | | |
| 74 | AT-7 | Defendant | 000027 | June 29, 2001 memo from Provost Van Buskirk to Alexander Thomasian | | None | | |

**Thomasian v. NJIT**
**Case No. 08-cv-2218 (FSH/PS)**
**Exhibit List**

19

2290255-01